THE COUNTY COURT OF CALHOUN COUNTY, for the use of Thomas Bradford, Plaintiff in Error, *v.* BALIS BUCK *et al.*, Defendants in Error.

### ERROR TO CALHOUN.

There is no lawful mode of renewing an execution, except there has been a return to that already issued by the officer, of his doings thereon. A justice of the peace cannot renew an execution by any indorsement of his upon it.

A constable must, within the time appointed by law, return an execution with an indorsement of his doings thereon, for the truth of which he is responsible; but no particular form of indorsement is required.

All instructions must be based upon evidence.

One constable cannot hand over an execution to another, so as to relieve himself from the responsibility of its return according to the statute; if another constable returns the execution within the statutory time, it may save him from liability, to whom it was first delivered.

THIS cause was tried at the April term, A. D. 1860, of the Calhoun Circuit Court, before WOODSON, Judge, and a jury.

The opinion of the Court, by Mr. Justice BREESE, gives a full statement of the case.

W. A. GRIMSHAW, and E. L. GROSS, for Plaintiff in Error.

A. G. BURR, for Defendants in Error.

BREESE, J. As this case is somewhat novel in several of its aspects, we will make a full statement of it.

It appears by the record, that the defendant, Balis Buck, was constable of the county of Calhoun, in this State, and his co-defendants were his sureties on his official bond. The suit was originally brought before a justice of the peace on this bond, alleging a failure to return a certain execution within the time required by law. It seems that one Bradford, for whose use the suit was instituted by the county of Calhoun, had, on the 17th of April, 1858, before William B. Johnson, a justice of the peace, recovered a judgment against one McKinney and Gray, for thirty and fifty one-hundredths dollars and costs. Execution was issued and delivered to Buck, the constable, as Johnson testifies, on the 11th of May following, though the time was not indorsed on the execution. Johnson also testifies, that "towards the end of the life of the execution," Buck brought the execution to his office, and wished him to take it back, which he said he would do, if Buck would make a return of some kind on the back of the execution, and sign his name to it as constable, which Buck refused to do, and took the execution away with him.

On the 17th of July following, one M. H. Champlin, also a constable of Calhoun county, brought the same execution to the justice, Johnson, and requested him to "*alias it.*" To this, the justice replied, he would give him a new one if he would return the old one. Champlin replied, that he did not want that, but wanted the justice to write on the back of the old writ, "alias by order of the constable," and sign his name to it as justice of the peace. The justice remarked, if Champlin could make the money, he supposed it would be all right, but he did not think such a proceeding was law, but he did indorse on the execution the writing now on it: "Alias by order of the constable, July 17, 1858. Wm. B. Johnson, J. P." Champlin then took the execution away with him, and retained it until the 12th of October following, and then brought it to the justice, with these indorsements on it: "No property

29

County Court of Calhoun County, use, etc., *v.* Buck *et al.*

found to. M. Chap, constable. August 17th." Which is understood to be an abbreviation of "M. H. Champlin," the constable's real name.

On this state of facts, the Circuit Court, to which the case had been brought by appeal, on motion of the defendant's attorney, instructed the jury, "That if they believe, from the evidence, that the justice of the peace received the execution in question from Buck, the constable, and before the expiration of return time, and gave it to another constable, that then neither Buck nor his sureties are answerable for any irregularities of either the justice of the peace or succeeding constable;" and "That there is no special form of indorsement necessary to constitute a return on an execution."

On behalf of the plaintiff, this instruction was asked : "The court instructs the jury that if they believe, from the evidence, that the execution was delivered to Buck, Buck had no right to tranfer said execution to another constable, and could not thereby escape from the responsibility of returning said execution according to the statute." Which was given, with this modification : "But if he did transfer said execution to another constable, who, within the proper time, required by law, took it to the justice who issued it, who indorsed it as an *alias* execution, and gave it to the constable to whom it had been transferred, then the defendants are not liable."

The plaintiff, at the proper time, excepted to the instructions given for the defendant, and to the modification of the one asked by him.

The jury found for the defendants, whereupon the plaintiff moved for a new trial, assigning as reasons, these instructions of the court, and because the verdict was against the law and evidence. The motion being overruled, an exception was taken, and a bill of exceptions signed, and the case brought here by writ of error. The errors assigned question the correctness of these instructions.

It is the first case of which we have any knowledge, wherein a writ of execution has been attempted to be renewed, by such an indorsement of the justice of the peace who issued it, as is here shown. We can find no authority for it in the statute, and must regard it as of no effect whatever, however convenient the practice may be. It is insisted, by the defendants' counsel, that when the execution was indorsed, "alias by order of the constable," it was in fact returned by the constable, and within the statutory time. It was certainly within the seventy days when these acts were done, but they do not constitute a legal return of the writ. We know of no lawful

mode by which an execution can be renewed, except by the actual return of the first or old execution with a proper indorsement of the officer thereon.

Our statute provides that all executions issued by a justice of the peace, shall be directed to any constable of the proper county, and made returnable to the justice who issues it within seventy days from the date; and that requirement is a part of the writ. (Scates' Comp. ch. 59, sec. 54, page 706.)

The constable must see to it that he makes his return within the time, and though it may be true, as stated by the court to the jury in the second instruction given for the defendants, that no special form of indorsement is necessary to constitute a return, still some indorsement is indispensable, and an execution cannot be said to be legally returned, without some sort of an indorsement upon it, for the truth of which the constable is responsible. The second instruction was calculated to mislead the jury; being told that no especial form was requisite, they may have inferred that no indorsement whatever of a return was necessary, and so they must have understood it.

As to the first instruction, we have often decided, that all instructions should be based on the evidence in the cause. This principle condemns the first instruction, for there is no evidence whatever that the justice, at any time, received the execution from constable Buck and gave it to another constable. The facts are, that Champlin obtained the execution from Buck himself, and not from the justice of the peace. This instruction, therefore, should not have been given, there being no evidence on which to base it.

As to the instruction asked by the defendants, we think it should have been given substantially as asked, certainly without the modification of the court. If we understand that instruction, it tends to say to the jury this, and nothing more, that Buck had no right so to transfer the execution to another constable, as to relieve him, to whom it was first delivered, from the responsibility of its return according to the statute. We do not deny the right of one constable, under certain circumstances, to hand over his writs to be executed by another constable, for the writs are all directed to any constable, and it cannot matter what constable executes them, so that they are executed and returned according to law. By so transferring his writs, the constable cannot relieve himself of responsibility, unless the writ be returned within the statutory time. Here there was no return until the lapse of more than ninety days.

By Sec. 118 of Chap. 59, it is provided, if any constable

shall neglect, or fail to return an execution within ten days after its proper return day, etc., the party aggrieved may have his action, etc., against the constable and his sureties on the official bond of the constable, and shall recover thereon the amount of the execution, with interest, etc. (Scates' Comp. 713.)

The law makes it absolutely necessary that some return of an officer should be made to an execution, by which he may be charged, for until it is returned with a proper indorsement upon it, the plaintiff's hands are tied—he is incapable of any other action toward the collection of his debt which the law affords. He cannot, in default of personal property, to be manifested by the return, file a transcript in the clerk's office of the Circuit Court, so as bind the real estate of the defendant. He cannot issue an execution to another county—he cannot resort to garnishee process—he cannot issue a capias against the body of the debtor; of all these advantages and privileges is the plaintiff in execution deprived, by the neglect or refusal of the constable to return the writ, with a proper indorsement thereon.

These views dispose of the case, and must reverse the judgment. The cause will be remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*